We have five cases on the calendar this morning, three patent cases, one from the Patent Office, two from the District Court, one of which is being submitted on the briefs and not be argued, two cases from the Claims Court, both of which are being submitted only on the briefs. Our first case is Wavetronix v. Smart Microwave Sensors, 2017-23-28. Mr. Lorimer. Thank you, Your Honor. May it please the Court, this case, like many cases before this Court, turns primarily on claim construction. The PTAB in this case was tasked with determining the broadest reasonable interpretation of the claim terms. The principal one in dispute here is the term traffic data. Mr. Lorimer. Yes, sir. Before the PTAB, I'm at 3401 of the appendix, and regarding whether a single vehicle could be traffic data, you said if there was one car on the road and ellipses, you got data from that car from one of these sensors, ellipses. Yeah, you could say that is traffic data. Are you walking away from that? How is that not a concession? Your Honor, if that is the only car on the road, it is all the cars on the road, and so our definition still fits. So is that the primary dispute? I mean, I get your argument that the vehicles would seem to, especially if you're under the broadest reasonable construction, would seem to contemplate all vehicles, but what is it about the term traffic? I understand that you put in some dictionary definitions, so what do you want us to say that traffic means? Well, that's a very good question, Your Honor, and I think if I might... All questions from the bench are presumed to be very good questions. They are, Your Honor, I agree with that. If I might start a little further back than that to answer the question. The question here is whether the, for purposes of affirming or reversing, is whether the PTAB's construction was correct. If it's incorrect, then there has to be a remand. It's not whether ours was correct or not, it's whether theirs was incorrect. Now, going back to the question you actually asked, the answer is this. Traffic data is not any data. It's like saying that if you have a process that defines all integers, identifies all integers, and then generates prime numbers from those integers, and you delete prime and say that all, that claim term means all integers or any integer, that's what the PTAB did. It said traffic data is the same as any data. Well, I understand that, and I see your definition both in your standard dictionary definition as well as the technical document that you put in that contemplates detecting the movement of vehicles. Yes. But yet, in connection with your description of the field of the invention, it seems to talk about more than just movement. Well, if you look at the field of the invention, what the court just referred to, it talks about presence, location, speed, direction of traffic, volume, and occupancy of vehicular traffic. And then if you go to the relevant technology, which is just below that, it says that the relevant technology is for urban planning, public safety, traffic control, science and engineering of traffic planning and control, collection of traffic flow data. All of those are traffic engineering, which is the flow of vehicles on a particular section of roadway. That's what traffic is in this context. And if you look throughout the specification, all through Column 1 and Column 2, and again in Column 10, it talks about the traffic data or the subject matter of this patent being about traffic flow, and it has to be on all or substantially all of the vehicles or it's not traffic. It's not useful. OK. Yes, sir. So Mr. Larimer, if there's only one vehicle and an hour later there's another vehicle, is that then traffic data? If you get both of those? Yeah. Yeah, that is all the traffic on the road for a particular period of time. Yes. Counsel, you want to premise patentability on the distinction between one vehicle and several vehicles? The title, the claims here are to a sensor, traffic sensor. That's the title of the patent. The Bowles patent is entitled Sensor for Intelligent Vehicle Highway Systems. It's basically the same field of invention. In Bowles in Column 8, there's a reference to all vehicles, and that's a pretty small distinction to premise patentability on. Your Honor, I think in this patent, as in all patents, what you have to do is look at the claim language and look at the art in view of that claim language. Here, traffic data means something different than what's in the art, and therefore, yes, as part of the entire universe of what's in the claim, we believe that they're patentable for the reasons we've stated in the briefs and below. I'm puzzled by the fact that you've got seven inventors here, all of whom presumably knew what was going on in the field, and none of these references were cited to the patent examiner. There is a duty of disclosure. Why were these not cited? They are certainly in the same field of invention. They have almost the same titles. Well, Your Honor, first of all, I'm not sure that I agree that they're in the same field of invention, but in order to— Well, if you look at the classifications, they're all 340s and 342s. Well, the art that has been cited in the PTAB is all about vehicle-centric sensors. That is, it determines what's going on in the immediate vicinity of the host vehicle that has the sensor in it. This is a bigger picture. This is for traffic planning and engineering. And the short answer to your question, however, is that we didn't know about them. If we had known about them, then that would have been a different question, but we didn't. Did you make a plain meaning argument to the board? We did, Your Honor. We used a definition from a dictionary that was very similar to the one that the petitioner relied upon. That definition was found in the Appendix 9 that is quoted in the PTAB decision, all the vehicles driving along a certain road or in a certain area. We believe, however, that there is plenty of information in the specification, for instance, in Column 10, that talks about what this is. And so we don't really need extrinsic evidence based on what's in the specification. In Column 10, it refers to the digitized output signal 674. That's in Figure 8 of the patent. Figure 8 of the patent says that you get all these signals from the roadway, and then you convert them back from analog to digital. And then at the bottom of Figure 8, it shows that what comes out of 676, which is the detection algorithm, is traffic data. And then if you go to Column 10 of the patent, it says that that output signal is the digitized. It performs spectral analysis on the digitized signal and generates the desired traffic statistics for use in traffic analysis, control, and forecasting. That is a crisp definition of what traffic data is. What we tried to do was to flesh that out a little bit by looking at it from the point of view of a person of ordinary skill in the art. He said that to make that useful, as it says here for traffic analysis, control, and forecasting, you have to have all or substantially all the vehicles, and you have to have it pertain to a particular location on the roadway. You make an argument for traffic engineering. The patent never says traffic engineering. Actually, forgive me. At one point in Column 1, around line 24, it uses the word engineering, but it never says traffic engineering. And how does a single use of engineering support the assertion that traffic data must be understood and construed in terms of traffic engineering? Well, Your Honor, if you look, for example, at the Abbott case that we cite in our brief, in that case, it said the limitation in question was an electrical chemical sensor, and the question was whether it had to be wired or wireless. And it didn't say wireless in the claim, but throughout the specification, it talked about that application. Everything in this application that we've referred to talks about traffic engineering. It doesn't use those two words side by side. No, it doesn't. I agree. It says the science and engineering of traffic planning and control. Right. Okay. Now, Judge Lee, I thought raised a very good point, talking about the stay-at-home mom or dad who cares deeply about one vehicle not running over their kid while playing in the street. Isn't that traffic safety and control when you see a sign that says children at play because the traffic engineers decided that they put it there? Well, I don't think that's traffic control in the sense of this patent, because this is talking about a sensor generating traffic data for traffic control, urban planning, forecasting. In a smart city. In a smart city. And that same section refers to the collection of traffic flow data. Correct. It does. And in a smart city, you would know everything that's happening on every street, right? And it would be used for exactly that purpose, right? Well, if you had all the information, if you had the information about the flow of all the vehicles on a particular section, yeah, it would. Your friend on the other side is going to argue that all this is interesting, but that even if we agree with you that the plain meaning of traffic is broader than or different than what the board adopted, that we should still find the patent to be obvious. What's your response to that? Your Honor, I see that I'm into my rebuttal time. You can answer the question. Thank you. I think the answer to that question, Your Honor, is that under the Chenery Doctrine, this court cannot affirm an administrative body on grounds not adopted by the administrative body unless it is a pure question of law. And here, the question of anticipation is clearly a question of fact, and the question of obviousness relies on underlying issues of fact. I don't think it would be appropriate to affirm on grounds not adopted by the PTAP. We will save the rest of your rebuttal time. Thank you. Mr. Calderon. Good morning. May it please the court. My problem is that you seem to read the word traffic right out of the construction. I mean, your friend on the other side cited a common dictionary. I went and looked at every single dictionary, every single dictionary out there defines traffic as the flow or movement of vehicles along a roadway. How is any data, which you argue could be even from a stationary vehicle that happens to be somewhere on the road, how is that consistent with the concept of traffic, of traffic flow, of traffic movement? I certainly don't want to conflate any facts here. The board has interpreted the traffic data to be any data generated or produced from a signal reflected off vehicles on a roadway. Right, so whether they're moving or not, right? Yes. And yet that seems to be inconsistent with every single common dictionary definition of traffic. Unless flow means lack of flow. Flow means vehicles, well, flow, first of all, is something that the board didn't interpret. That is to say that the traffic engineers might be interested when all the traffic on a freeway is stopped. They very well might be interested. Again, you had mentioned traffic engineering. First and foremost is that the specification never mentions traffic engineering itself. That is something that's being interpreted into the specification. But secondly, the traffic specifically in this definition are the vehicles on a roadway. And then the data is something that's being generated or produced from a signal reflected off of that traffic, which is the vehicles on the roadway. And our contention, our belief is that that is the broadest reasonable interpretation of the claim term traffic data in view of both the intrinsic evidence and the extrinsic evidence. But your argument is that it's broad and reasonable to say that one vehicle, even if it's in the midst of multiple vehicles, would constitute traffic? We're saying that it can be one or it can be multiple. Well, of course it can be one if one and all are one and the same. But if it is one out of 20, then how is that monitoring traffic? It's looking at traffic for the purposes of whether it's traffic control, whether it's for collision control. No, it's looking at any vehicle. It's not looking at the traffic if it's only monitoring one out of multiple. There may be only that one vehicle on there. But again, our point is that the broadest reasonable definition does not exclude the use of many vehicles. I'm looking at many vehicles on the roadway. That doesn't even make sense to me. If you have the phrase the vehicles, you could say that could mean one, but it doesn't say one. It could mean some or it could mean all. The broadest definition of that is all vehicles. The broadest reasonable... Broadest doesn't mean whichever is the thing that makes the patent invalid. It means broadest. Yes, it's the broadest reasonable interpretation. So how is the broadest definition of the vehicles on a roadway, not all vehicles on a roadway? Because we're trying to define traffic data and when you're looking at not only the specification, but you're looking at the corroborating evidence, the extrinsic evidence at hand. For example, you're looking at the detection technology for IVHS, which is a document provided by a patent owner themselves. They specifically have three distinct definitions of traffic data. Some of those definitions include a single vehicle. They look for a single vehicle, whether it's the type of vehicle. You might need to look at the type of vehicle because you might have certain loads that are required on a road. But they look at the type of vehicle. They look at the speed of the vehicle, the length of the vehicle, the motion of the vehicle, as well as multiple vehicles, as well as occupancy, as well as all these other features. And so when you're looking at the broadest reasonable interpretation, it must encompass all of these things, not some of these things. And so when you're looking at the extrinsic evidence and you're looking at this particular reference itself, it says that traffic data, which it specifically mentions traffic data, unlike the specification of the 557, which only mentions it in the figures and never describes or provides a definition of traffic data, which is admitted by Hawkins. But more than once, it refers to the flow of traffic, right? The specification has a flow of traffic, but they don't mention that in the claims. And you have to look at this also in the context of the claims. And you also have to look at this, and we've mentioned... My problem is that this is just common sense. Traffic is the flow of vehicles along a roadway, the movement of vehicles along a roadway. Every definition says that. Common sense says that. Why are we parsing this so much that we're taking out the common sense definition from the term? With all due respect, I don't believe that we're taking the common sense definition out of the term. We are looking at the plain meaning of the term. But when you look at this in light of the claims themselves, the claims are mentioning the flow of the traffic in the claims themselves. They specifically say here that you have a receiver portion for claim number 9, for example. We've said repeatedly you don't need to define a term that everybody knows what it means. So that if you use a term, if you use... We had a case where we used the term telephone. And we said you don't have to define that any further than that. People know what a telephone is. People know what traffic is. I would agree with you that people know what traffic is, but it's the traffic data. It's that term itself. And one needs to define that term. The board thought that it was important as well to define that term in order to proceed further in the proceedings. And when you're looking at the broadest reasonable interpretation, not only are they looking at the specification, which does not define the traffic data itself, but you also have to look at the extrinsic evidence, which helps you interpret that. And they provide then the broadest reasonable interpretation based on that. And the detection technology by VHS in particular specifically mentions traffic data by three different entities, Autoscope, Traffic Analysis Systems, and IDET-100. And each one of them provide you with a definition. And the definition includes both singular as well as plural vehicles. And so when you look at the definition, you have to look at the broadest reasonable interpretation, and it needs to encompass all of these things that are provided from a common sense standpoint. Well, let's look at traffic from a common understanding of the phrase. I'll do it like lawyers do, one end and the other end, see if we can agree on it. At one end, you're watching a particular section of the roadway, and all you see, all you sense is a vehicle which is not moving on a heavily trafficked road. It seems to me that that's data about traffic, which is to say the traffic isn't moving. On the other hand, on that particular section of road for a statistically significant period of time, there is no reflection, there is no vehicle there. That seems to me as well to be traffic data for the person interpreting it, because it says somewhere up the road there's a blockage which isn't permitting vehicles to go by. So even if they're not getting any data feed from that particular section of road, that's telling them something. So on both those extremes, I think everybody agrees that's still traffic. Traffic could be one, some, multiple, or none. Absolutely can be. But as long as none is equivalent to all. In other words, it can be one if there's no one else on the roadway. It can be none if there's no one on the roadway. That's the whole point. We're trying to keep track of the whole flow, of the whole movement of these vehicles. Yes, in the context of the claims, though, what we're trying to do is define again the traffic data and define in the context of the claims and define in the specification, where the specification also mentions a specific target that can be obtained. Again, one has to look at the totality of the circumstances and one has to look at what the traffic might be. And again, it can't be limited to all, it has to be limited perhaps to one, because there are many different applications for this particular specification. And in fact, when we refer to column number 10, column number 10 specifically mentions that the present invention may be embodied in other specific forms without departing from its spirit or essential characteristics. And importantly, the described embodiments are to be considered in all respects only as illustrative and not restrictive. Well, that's standard boilerplate that's in every patent. It really doesn't tell you much. Well, what it does tell us, though, is that there's a broad implication to that and there's a broad interpretation of the specification and that it was the inventor's intent when he's describing this or it's consistent with the inventor's description in the specification itself that the claim construction be looked at more broadly and interpreted more broadly because of that language. It's very similar to the Ignite USA, the Camelback products case, which again had very similar language in what it was interpreted by the court was. Then we have to interpret the claims in broader. Don't you want to tell us how solid a reference Bowles is with respect to these claims in traffic? Bowles is very, very pertinent to that. Bowles particularly mentions that it's for the goals of the US Department of Transportation for IBHS, which is the Intelligent Vehicle Highway System, which is very similar to what not only that the 557 patent is, but also very similar to what the patent owner has provided us with their article for the detection. What's your best evidence to support your interpretation of why a person of skill would be motivated to combine Bowles with the other prior references? As far as the obviousness is concerned with Bowles, that was the Bowles in view of the Herman and the Farmer reference. Basically, what we have in that particular case is that Bowles specifically mentions that they have a transmit and they have a receive portion, but they don't say how they're putting that together. We have here that Paré itself, as well as Herman, both say that it's cost effective to put a single board into the system itself. Both of them explicitly mention that. In addition to that, although the board did address this issue where although you could provide a particular advantage or benefit to a particular reference, the primary reference, that you don't have to show all, maybe other advantages and disadvantages. But interestingly enough, Paré itself mentions that there is a leakage issue and that their single board that they're using has solved this leakage issue. And Bowles also has that leakage issue. So they are certainly solving a problem that's in the Bowles reference. Given that Wavetronics appears, and I'll let Mr. Lorimer correct me, appears to predicate its obviousness arguments on claim construction, if we agree with PTAB on claim construction, do we even have to get to obviousness? Well, as far as an anticipation rejection, no, you wouldn't need to get into obviousness, but we have many different references that are part of our rejection that were sustained. And one of them happened to have been with regards to the obviousness of combining Bowles with either Herman or with Farmer. And that is to put a single circuit board on or use a single circuit board in Bowles. And we're not looking for a bodily incorporation here. We're looking just to say that we have a single circuit board and we're using that single circuit board for the transmit as well as the receive and transmit. Does obviousness conclusions depend on their claim construction? I don't believe that they do, actually. I would submit to this court, and as we've already breathed here, that Bowles... But didn't the board base its obviousness conclusion on its claim construction? In other words, if we disagree, how do you respond to the argument on the other side that we can't just adopt your alternative grounds for affirming because that would be a Chenery problem? That would not because that was already argued in the lower proceedings. But that's different. We're not... This isn't a district court proceeding. This is an agency proceeding, and we can only base a decision on the same grounds that the agency based their decision. And they based their decision on their interpretation, but they also, in their interpretation and throughout their brief, have gone back and forth between looking at their own interpretation as well as the patent owner's interpretation. Where in the board's opinion did the board say even if we accept the patent owner's definition, it's still obvious? I don't believe that I have that on hand, but I do know that it would be somewhere in the appendix 41, 42, 43 area perhaps. And what they're doing in the particular decision, if I may, they specifically mention in here that they've looked to the patent owner's interpretation. They looked at the petition's interpretation. They've adopted their own interpretation, and with the adoption of their own interpretation, they've settled this. But they've also looked at the other ones, and according to the practice rules... They didn't specifically mention that in the alternative, that if we adopted their grounds, that it would still be found obvious. No, they did not. I'm sorry if you misinterpreted, if I misspoke on that or there was a misinterpretation. What I am saying is that they were briefed on that. It was part of the arguments in the lower tribunal with regards to Bowles and with regards to Farmer. And we briefed that at page 31, 46, 47 of our own brief. And with regards to the Bowles reference itself, they are now bringing that up in this tribunal, in this proceedings itself. And it was briefed here with regards to the Bowles reference. Thank you, counsel. Thank you. I have a couple of minutes for rebuttal. Thank you. I think it's an interesting exercise, your honors, if you would look at claim 9 and substitute the PTAB's definition for traffic data. It would read like this. A receiver portion that detects a reflected signal from the vehicles traveling on the roadway and that generates a data signal that represents any data generated or produced from a signal reflected off vehicles on a roadway from the reflected signal. Adopting that interpretation, the second half of that claim element is the same as the first. They're saying any data generated or produced from a signal is traffic data, but that is already required by the first part of the claim element. The first part of the claim element requires a reflected signal from the vehicles traveling on the roadway. They just eviscerate any meaning for traffic data when they add that, when they use that interpretation. Now, I'd like to respond, if I could, briefly to Judge Wallach's question about Bowles. The question there about the combination of Bowles for obviousness purposes. The Bowles reference, in our view, is not about traffic data. The only one they talk about in Bowles they rely on, PTAB, was the passive mode. And both the text of Bowles and the testimony from Mr. Alland about Bowles, he's their expert about Bowles, was that the only thing that thing does is determine whether there is one vehicle traveling much faster than the general traffic on the road. That's not traffic data. He said, in fact, that if all the vehicles were going by at 100 miles an hour, he said the same speed, it wouldn't detect any of them. And he said that, and Bowles itself says there's 65 feet resolution. You can't detect individual vehicles at 65 feet because it gloms everything within the 65 feet into one reflection. That is not about traffic data. It just isn't. Now, with respect to the combination, they try to combine Bowles and Parrott, Parrott and or Herman. And they say that Herman teaches the circuit board and so does Parrott, and therefore it would have been smart to put Bowles, a person of ordinary skill would have been motivated to put Bowles on a circuit board like Herman's or Parrott's. Well, with Herman, Bowles talks about this need to have their receiver and their transmitter six feet apart to deal with the leakage problem. I've never seen a circuit board that's six feet big to deal with that. Herman does not. That just doesn't work. Now, Parrott has this complicated lattice work to deal with the leakage problem. It has a lattice and has a lid on the lattice. I'm over. May I finish? No, finish your answer. It has a lid on the lattice, and Mr. Alland testified that it would be, A, more complex, more parts, and, B, more expensive than what was already being done. Now, if you look at motivation from a common sense point of view, it is, what would somebody out there working in the trenches do? Well, he would look at all these things, cost, effectiveness, and it just doesn't work with Parrott for that reason. I thank you for your time this morning. Thank you, counsel. We'll take the case under advisement.